The opinion below is hereby signed.  Dated: January
5, 2006.


_____
S. Martin Teel, Jr.
United States Bankruptcy Judge


UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| In re | ) | |
| | ) | |
| EDUARDO R. POTILLO, | ) | Case No. 04-00146 |
| | ) | (Chapter 7) |
|        Debtor. | ) | |
| _____ | ) | |
| | ) | |
| LONGFELLOW APARTMENTS, LLC, | ) | |
| *et al.*, | ) | |
| | ) | |
|        Plaintiffs, | ) | |
| | ) | |
|        v. | ) | Adversary Proceeding No. |
| | ) | 04-10046 |
| EDUARDO R. POTILLO, | ) | |
| | ) | |
|        Defendant. | ) | |


OPINION AMENDING AND SUPPLEMENTING FINDINGS OF FACT AND
CONCLUSIONS OF LAW ANNOUNCED ON NOVEMBER 23, 2005

The plaintiffs, Longfellow Apartments, LLC ("Longfellow"),

Allison Apartments, LLC ("Allison"), and Randolph Apartments, LLC

("Randolph"), initiated this adversary proceeding to obtain a

determination that amounts allegedly owed by the defendant

Eduardo R. Potillo to Longfellow in the amount of $54,601.00, to

Allison in the amount of $68,573.00, and to Randolph in the

amount of $71,872.00 were non-dischargeable pursuant to 11 U.S.C. §§ 523(a)(2), 523(a)(4), and 523(a)(6).  A trial was held on November 22, 2005, and November 23, 2005, after which the court announced its findings of fact and conclusions of law from the bench.  The court ruled that Potillo owes $43,295.00 to Longfellow, $68,573.00 to Allison, and $71,872.00 to Randolph. The court further ruled that these debts are non-dischargeable under 11 U.S.C. § 523(a)(4), and that the plaintiffs are entitled to interest on their judgments at the statutory rate of 6% per annum specified by D.C. Code § 28-3302.  See Duggan v. Kato, 554 A.2d 1126 (D.C. 1989).[1]  This opinion amends and supplements the court's earlier ruling.

I

The plaintiffs are three separate apartment complexes with a single owner.  Potillo was the co-owner and principal of Washington & Jackson Investments, LLC ("W & J").  Potillo, operating through W & J, entered into management contracts with all three apartment complexes.  (Pl. Ex. 1-3).  Thereafter, Potillo managed the properties of the apartment complexes pursuant to the management agreements and District of Columbia law.  In that capacity, Potillo was responsible for collecting all rents and maintaining them in an "Operating Account,"

---

[1]  The court did not award attorneys' fees to the plaintiffs.

collecting all security deposits and maintaining those deposits
in a separate account, paying all expenses of the apartment
complexes out of the Operating Account, maintaining and leasing
the properties, and handling the daily business of running the
complexes in general.

The plaintiffs alleged numerous violations of Potillo's
contractual and statutory obligations in managing the apartments
at trial.  They claimed that Potillo deposited tenant security
deposits into W & J's Operating Account in contravention of
District of Columbia law and then paid W & J operating expenses
out of the intermingled funds, that W & J used these funds to pay
not only expenses relating to the plaintiffs' buildings, but also
other W & J business expenses, and that W & J continued to
deposit rent checks received from the District of Columbia
Housing Authority ("DCHA") into a W & J account for months after
W & J terminated its management agreement with the plaintiffs.
Longfellow also claimed that Potillo failed to file an insurance
claim on a fire-damaged apartment in a timely manner, thereby
causing six months of lost rent in that apartment, and allowed a
personal acquaintance to stay in two apartments rent-free for a
total of six months.

Potillo conceded at trial that he failed to keep tenant
security deposits that he collected in a segregated account as
required by D.C. law, that these funds were used to pay unrelated

3

W & J business expenses, and that this failure was a breach of
his fiduciary duty to the plaintiffs.  Longfellow, for its part,
withdrew its claim based on the failure of Potillo to file an
insurance claim on one fire-damaged apartment upon discovering at
trial that rents from the apartment were received after the fire
occurred.

The court, relying in part on a detailed "Accounting
Reconciliation" prepared by Potillo (Pl. Ex. 7), concluded that
Potillo owed Longfellow $30,103.11 for Operating Account assets
used to pay other W & J business expenses plus another $9,352.00
for misused security deposits and $3,840.00 for lost rents
created by Potillo's decision to allow an acquaintance to stay in
Longfellow apartments rent-free for six months.  The court
further concluded that Potillo owed Allison $60,762.00 for
misused Operating Account assets plus $7,811.00 for misused
security deposits.  Finally, the court concluded that Potillo
owed Randolph $61,374.00 for misused Operating Account assets
plus $10,498.00 for misused security deposits.

The court held that Potillo was not liable for unlawfully
held DCHA deposits because there was no evidence that Potillo
knew that these deposits were occurring at the time or profited
from them.  It also held that Potillo was not liable for any
incidental expenses caused by the person who lived rent-free at
Longfellow because there was no way to verify or quantify such

4

expenses.  Finally, the court held that the debts owed by Potillo

to the plaintiffs were non-dischargeable under 11 U.S.C. §

523(a)(4).  It is this legal determination that the court amends

and supplements below.

II

"Section 523(a)(4) of the Bankruptcy Code provides that a

discharge under the Code does not discharge an individual debtor

'from any debt . . . for fraud or defalcation while acting in a

fiduciary capacity, embezzlement, or larceny[] . . . .'" <u>Old</u>

<u>Republic Sur. Co. v. Richardson (In re Richardson)</u>, 193 B.R. 378,

380 (D.D.C. 1995).  Potillo's actions constitute both a

"defalcation while acting in a fiduciary capacity" and

embezzlement within the meaning of § 523(a)(4).  Consequently,

the debts created by his malfeasance are not subject to

discharge.

A.   <u>Defalcation by a Fiduciary</u>

To prevail under the "defalcation" provision of § 523(a)(4),

"[the p]laintiffs must prove that (1) the defendant was obligated

to the plaintiff in a fiduciary capacity; (2) the defendant

committed fraud or defalcation while acting in his fiduciary

capacity; and (3) the plaintiff's debt resulted from such fraud

or defalcation."  <u>Jacobs v. Mones (In re Mones)</u>, 169 B.R. 246,

255 (Bankr. D.D.C. 1994).  As set forth in part I of this

opinion, the court has already ruled that Potillo's debts to the

5

plaintiffs are a result of his misuse of funds in W & J's
Operating Account and separate account for security deposits.
The court will therefore not address the third prong of the
standard employed in In re Mones.

Counsel for Potillo also acknowledged at trial that Potillo
was a "fiduciary" for purposes of § 523(a)(4), and plaintiffs
assumed that the identities of W & J and Potillo were one and the
same in determining the extent of Potillo's liability--an
assumption borne out by the evidence presented at trial.
Potillo's waiver on this point renders consideration of the first
prong of the In re Mones standard unnecessary.  Nevertheless, out
of an abundance of caution, the court will conduct its own
inquiry into the nature of Potillo's relationship with the
plaintiffs.

  1.   Fiduciary capacity

"For purposes of section 523(a)(4), the meaning of the term
'fiduciary capacity' is a question of federal law[,] which has
held that the term applies only to technical trusts and not to
fiduciary relationships which arise from equitable, implied[,] or
constructive trusts or an agency relationship."  In re Mones, 169
B.R. at 255.  In other words, "the debtor must have been a
trustee or fiduciary before the wrong and not a trustee ex
maleficio."  Id.  "[T]he courts must look to non-bankruptcy law
to determine whether there exist the elements of a trust

6

relationship as required by federal law for a fiduciary

relationship to exist." Id.

Courts in the District of Columbia have adopted the

definition of a trust set forth in the Restatement of Trusts.

See Cabaniss v. Cabaniss, 464 A.2d 87, 91 (D.C. 1983). Applying

the Restatement, the D.C. Court of Appeals held in Cabaniss that

> The elements of a trust, including an inter
> vivos trust created for the benefit of a
> third person, are the following: 1) a
> trustee, who holds the trust property and is
> subject to equitable duties to deal with it
> for the benefit of another; 2) a beneficiary,
> to whom the trustee owes equitable duties to
> deal with the trust property for his benefit;
> [and] 3) trust property, which is held by the
> trustee for the beneficiary.

Id.; see also Air Transport Ass'n of Am. v. Prof'l Air Traffic

Controllers Org. (In re Prof'l Air Traffic Controllers Org.

(PATCO)), 26 B.R. 337, 342 (Bankr. D.D.C. 1982) (defining a trust

under District of Columbia law by reference to the Restatement of

Trusts). While the Cabaniss court concluded that "[n]o

particular form of words or conduct is necessary to manifest an

intention to create a trust," id.,[2] the court regarded "the

settlor's manifestation or external expression of his intention

to create a trust" to be "[e]ssential to the creation of a

_____

[2] See also In re Prof'l Air Traffic Controllers Org.
(PATCO), 26 B.R. at 343 (discounting "mere fact that the terms
'trust' or 'trustee' were not specifically employed in the actual
drafting" of a corporate resolution in holding that resolution
created express trust).

trust . . . ." <u>Id.</u>

> (a)  <u>Fiduciary capacity of W & J</u>

In this case, Potillo's company, W & J, was a fiduciary to
the plaintiffs by virtue of the management agreements between
W & J and the plaintiffs.  Each agreement specified that W & J
would "establish a separate tracking Operating Account within
[W & J's] system for the tracking of income and expenses" (Pl.
Ex. 1 ¶ 3.a; Pl. Ex. 2 ¶ 3.a; Pl. Ex. 3 ¶ 3.a).  Funds within the
Operating Account "remain[ed] the property of the [plaintiffs]
subject to disbursement of expenses by [W & J] as described" in
the management agreement (<u>id.</u>).  The management agreements also
required W & J to "maintain all residential rental security
deposits in an interest bearing account for tenants to whom
interest shall accrue as required by law" (Pl. Ex. 1 ¶ 3.c; Pl.
Ex. 2 ¶ 3.c; Pl. Ex. 3 ¶ 3.c).

The management agreements created express trusts between the
apartment complexes and W & J.  They required W & J (the trustee)
to hold certain defined funds (the trust <u>res</u>) for a specified
apartment complex (the beneficiary) and use those funds for
certain clearly defined purposes and subject to certain clearly

defined restrictions.[3]  This arrangement constituted an "express
trust" under District of Columbia law and a trust creating a
fiduciary relationship between W & J and the plaintiffs for
purposes of § 523(a)(4).  See Cabaniss, 464 A.2d at 91-92; see
also In re Prof'l Air Traffic Controllers Org., 26 B.R. at 342-
344.

(b)  Fiduciary capacity of Potillo

Whether Potillo was himself a fiduciary with respect to the
plaintiffs is a harder question.  Arguably, Potillo owed a duty
to care to the plaintiffs both as the principal of the
plaintiffs' corporate fiduciary (W & J) and as a licensed
property manager under District of Columbia law.  The court
examines the nature of these duties with respect to § 523(a)(4)

_____

[3]  The benefit to the plaintiffs arising from this
arrangement is less direct with respect to the security deposit
account created by W & J only because the account was created (at
least ostensibly) to hold funds belonging to and for the benefit
of the tenants of the respective apartment complexes, not the
complexes themselves.  Under District of Columbia municipal
regulations, however, it is the owner of a residential building
(here, the plaintiffs) who is obligated to hold tenants' security
deposits "in trust" in a District of Columbia financial
institution, not the property manager.  D.C. MUN. REG. § 14-308.3.
W & J agreed to uphold this obligation on behalf of the
plaintiffs pursuant to the management agreements, but it could
not have relieved the plaintiffs of their fiduciary obligations
to their tenants.  Instead, W & J and the plaintiffs created what
was in essence a "trust within a trust" through the management
agreements in which the plaintiffs--trustees of the beneficiary
tenants' security deposits under D.C. law--became the
beneficiaries of a separate trust consisting of the same res (the
tenants' security deposits) but maintained by a separate trustee
(W & J).

in turn.

(i)

More than one court has held that the officer of a corporate
fiduciary is not a fiduciary of the creditor for purposes of §
523(a)(4) even where the creditor was a guarantor of the
corporation's debt.  See, e.g., Barclays Am./Bus. Credit, Inc. v.
Long (In re Long), 774 F.2d 875, 878-79 (8th Cir. 1985)
(officer/guarantor "was not an express fiduciary because the
document creating the trust named [the corporate debtor], rather
than [the officer], as trustee"); Conn. Nat'l Bank v. Clark (In
re Clark), 65 B.R. 306, 307-08 (Bankr. D. Conn. 1986) ("[E]ven
where loan documents purportedly establish a fiduciary
relationship between a creditor and a corporation, officers
acting as guarantors of the corporate loan have not been deemed
to be fiduciaries under § 523(a)(4) with respect to such third-
party creditors.").  The logic behind these decisions is fairly
straightforward: corporate officers are usually charged with a
corporation's fiduciary status only by virtue of local rule or
statute, and should not be so charged absent an express
provision, In re Long, 774 F.2d at 878; and imposing the
fiduciary obligations of a corporation on an officer due to the
officer's misconduct would create a trust ex maleficio, which
does not constitute an "express trust" for purposes of §
523(a)(4).  In re Clark, 65 B.R. at 308.

10

Other courts have reached the opposite conclusion.  In

Airlines Reporting Corp. v. Ellison (In re Ellison), 296 F.2d 266

(4th Cir. 2002), the Fourth Circuit concluded that a corporate

officer could be considered a fiduciary under § 523(a)(4) where

(1) the corporation breached a pre-existent fiduciary duty to a

creditor, (2) the officer owed fiduciary duties to the

corporation fiduciary under state law, and (3) the officer was

responsible for the corporation's breach.  Id. at 270-72.

Similarly, the Sixth Circuit has concluded that a corporate

officer can be considered a fiduciary under § 523(a)(4) where the

officer had "full knowledge and responsibility for the handling

of [the corporate fiduciary's] trust undertakings."  Capitol

Indemnity Corp. v. Interstate Agency, Inc. (In re Interstate

Agency, Inc.), 760 F.2d 121, 125 (6th Cir. 1985).[4]  And at least

one bankruptcy court has concluded that corporate officers of

fiduciary companies should be considered fiduciaries under §

523(a)(4) because "a director or officer of a corporate trustee

'is under a duty to the beneficiaries to use reasonable care in

---

[4] Accord Mostiler v. Couch, 100 B.R. 802, 808 (Bankr. E.D.
Va. 1988) (majority shareholder and CEO of corporate fiduciary
held to be a fiduciary to creditor under § 523(a)(4) as well
because the "funds were entrusted to [the corporation] and also
to [the CEO] through his absolute control of the corporate
funds"); but see Commonwealth of Ky. v. Kinnard, 1 F.3d 1240 (6th
Cir. 1993) (limiting In re Interstate Agency, Inc. to situations
where statute imposes fiduciary obligations on corporate officer
as well as corporation upon creation of a specific type of trust)
(unpublished opinion), available at 1993 WL 300425.

the exercise of his powers and the performance of his duties as such director or officer.'"  Global Express Money Orders, Inc. v. Davis (In re Davis), 262 B.R. 673, 683 (Bankr. E.D. Va. 2001)(quoting 4 Scott on Trusts § 326.3 at 307 (3d ed. 1967)) (emphasis in original).[5]

The common concern animating these decisions (and others like them) is the need to avoid

> a construction [of § 523(a)] so narrow as to eviscerate § 523(a)'s purpose of preventing debtors . . . from avoiding, through bankruptcy, the consequences of their wrongful conduct.

In re Ellison, 296 F.3d at 271.[6]  For these courts, an individual officer of a corporation who assumes the responsibility of carrying out that corporations' fiduciary duties as a trustee acts in a fiduciary capacity towards the beneficiary of the trust.  See In re Davis, 262 B.R. at 683.  If an officer knowingly misuses the trust funds, that officer has engaged in defalcation while acting in a fiduciary capacity.  In re Ellison, 296 F.3d at 271; see also Hemelt v. Pontier (In re Pontier), 165 B.R. 797, 798-99 (Bankr. D. Md. 1994) (officer is liable for

---

[5]  Accord Bellity v. Wolfington (In re Wolfington), 48 B.R. 920, 924 (Bankr. E.D. Pa. 1985) ("It is well established that corporate officers occupy a fiduciary relationship to the corporation and its creditors.").

[6]  Accord In re Davis, 262 B.R. at 684; Wilcoxon Constr., Inc. v. Woodall (In re Woodall), 177 B.R. 517, 522 n.2 (Bankr. D. Md. 1995); Sun Life Ins. Co. of Am. v. Koszuth (In re Koszuth), 43 B.R. 104, 108 (Bankr. M.D. Fla. 1984).

corporate fiduciary's debts only if officer "specifically
directed the particular act to be done, or participated or
cooperated therein").

Although there is merit to both sides of this debate, the
court finds the approach taken in <u>In re Long</u> and <u>In re Clark</u> to
be more persuasive in light of the Supreme Court's ruling in
<u>Davis v. Aetna Acceptance Co.</u>, 293 U.S. 328 (1934).  In <u>Davis</u>,
the Court defined the term "fiduciary" in the Bankruptcy Act
predecessor to § 523(a)(4) to mean only the fiduciary of an
express trust.   <u>Id.</u>  The Court explained its ruling by pointing
to the "unbroken continuity" of rulings over the prior century
interpreting the term to refer only to express trusts.   <u>Id.</u>  As
the Court explained:

> It is not enough that, by the very act of
> wrongdoing out of which the contested debt
> arose, the bankrupt has become chargeable as
> a trustee <u>ex</u> <u>maleficio</u>.  He must have been a
> trustee <u>before</u> the wrong <u>and</u> <u>without</u>
> <u>reference</u> <u>thereto</u>.

<u>Id.</u> (emphasis added).

To be sure, there are legitimate grounds to question the
applicability of the <u>Davis</u> decision to cases like the one before
this court.  <u>Davis</u> concerned an automobile dealer who converted
funds; unlike this case, there was no express trust in existence
at all.  <u>See id.</u> at 333.  Courts since <u>Davis</u> have held uniformly
that technical trusts created by virtue of statute confer
fiduciary status upon the trustee of such a trust for purposes of

13

§ 523(a)(4), see, e.g., Blyler v. Hemmeter (In re Hemmeter), 242
F.3d 1186, 1190 (9th Cir. 2001) ("[f]iduciary relationships
imposed by statute may cause the debtor to be considered a
fiduciary under § 523(a)(4)"), and several courts have held that
statutes making officers and directors of a corporation
fiduciaries of that corporation also make the officer and
directors fiduciaries of the corporation for purposes of §
523(a)(4) even in the absence of a technical trust. See In re
Bernard, 87 F.2d 705, 706-07 (2d Cir. 1937) (corporate officers
and directors qualified as "fiduciaries" with respect to
corporation under Bankruptcy Act predecessor to § 523(a)(4)); In
re Whitlock, 449 F. Supp. 1383, 1390 (W.D. Mo. 1978).

These decisions have led some courts to conclude that the
Court in Davis was actually concerned solely with the timing of
the creation of the trust giving rise to fiduciary duties; i.e.,
that fiduciary relationships arising from or subsequent to fraud
or defalcation do not fall within the scope of the § 523(a)(4)
exception, but fiduciary relationships created before the
debtor's wrongdoing qualify for the exception regardless of
whether the relationship arises from a technical or express
trust. See Cutter Realty Group, Inc. v. Schiraldi (In re
Schiraldi), 116 B.R. 359, 361-62 (Bankr. D. Conn. 1990)
(collecting cases). Under this reading of Davis, an officer of a
corporate fiduciary could conceivably be considered a fiduciary

of the corporation's beneficiary under § 523(a)(4) because the
officer's status as a fiduciary would arise from her pre-existent
relationship to the corporate fiduciary, not as a result of the
debtor's wrongdoing.

The problem with this argument is that, in the absence of an
express agreement or a statute imposing, at a minimum, some type
of fiduciary duties upon the officer with respect to a third-
party beneficiary, there is no basis on which to conclude that
the officer owes the third party any fiduciary duties at all
except for equitable or constructive duties imposed by a court
after the fact.[7]  Even if this court adopted an interpretation of
<u>Davis</u> focusing purely on the timing of the creation of the
"fiduciary" relationship, it would still be forced to conclude
that the officer of a corporate fiduciary is not a fiduciary to
the third-party beneficiary within the meaning of § 523(a)(4)
unless a fiduciary relationship was created beforehand by virtue
of agreement or statute.  As there was no such agreement or
statute in place here, the court concludes that Potillo is not a
fiduciary for purposes of § 523(a)(4) by virtue of his status as

---

[7]  This was essentially the position taken by the Eighth
Circuit in <u>In re Long</u>, and was also a point made by Judge Luttig
in his dissenting opinion in <u>In re Ellison</u>.  <u>See</u> <u>In re Ellison</u>,
296 F.3d at 274-75 (Luttig, J., dissenting); <u>In re Long</u>, 774 F.2d
at 878.

15

the principal of W & J.[8]  To the extent that a debt for

defalcation can arise based on an innocent mistake,[9] this

approach has the benefit of protecting corporate officers and

other employees who engage in innocent, non-negligent defaults.

To the extent that such officers or employees engage in a knowing

defalcation, the debt will nevertheless likely escape discharge

under § 523(a)(4) as a debt for embezzlement.

(ii)

Separate and apart from his status as the principal of a

corporate fiduciary to the plaintiffs, Potillo owed special

duties to the plaintiffs under District of Columbia law due to

his status as a property manager.  See D.C. CODE §§ 47-2853.141,

47-2853.195.  This section of the D.C. Code imposes numerous

"fiduciary" duties on a licensed "Property Manager" with respect

to the owner of a property, including the duty to "[p]erform in

---

[8]  The court declines to follow the In re Davis and In re
Wolfington courts in inferring some sort of common-law fiduciary
status for corporate officers.  While a corporate officer may
have a basic duty to use "reasonable care in the exercise of his
powers and the performance of his duties" with respect to the
beneficiary of a corporate fiduciary, In re Davis, 262 B.R. at
683, that nominal obligation falls far short of the kind of
responsibility contemplated by § 523(a)(4).  As for In re
Wolfington, the court in that case appears to have confused the
special obligations of a corporate officer of an insolvent
corporation to the corporation's creditors with the ordinary
obligations of a corporate officer working for a healthy, solvent
corporation.  While understandable, the court's conclusion in
that case is fundamentally flawed, and this court accordingly
rejects it.

[9]  See note 12, infra.

16

accordance with the terms of the property management agreement,"
D.C. CODE § 47-2853.195(1), the duty to "[e]xercise ordinary care"
in the management of the property, <u>id.</u> at § 47-2853.195(2), the
duty to "[d]isclose in a timely manner to the owner material
facts of which the licensee has actual knowledge concerning the
property," <u>id.</u> at § 47-2853.195(3), the duty to "[a]ccount[]
for[,] in a timely manner, all money and property received in
which the owner has or may have an interest," <u>id.</u> at § 47-
2853.195(5), and the duty to "[c]omply with all requirements of
[§ 47 of the D.C. Code], fair housing statutes and regulations,
and all other applicable statutes and regulations . . . ."   <u>Id.</u>
at § 47-2853.195(6).

It is not enough, however, for a statute to label a duty
"fiduciary" in nature to create such a relationship within the
meaning of § 523(a)(4).  Most courts require that the statute
"(1) define[ a] trust <u>res</u>; (2) identif[y] the fiduciary's fund
management duties; and (3) impose[] obligations on the fiduciary
prior to the alleged wrongdoing."   <u>In re Hemmeter</u>, 242 F.3d at
1190.[10]  Some courts have established narrow exceptions to this

---

[10]   <u>Accord</u> <u>Texas Lottery Comm'n v. Tran (In re Tran)</u>, 151
F.3d 339, 342-43 (5th Cir. 1998); <u>Metropolitan Steel, Inc. v.
Halversen (In re Halversen)</u>, 330 B.R. 291, 296-97 (Bankr. M.D.
Fla. 2005); <u>Duncan v. Neal (In re Neal)</u>, 324 B.R. 365, 370
(Bankr. W.D. Okla. 2005); <u>Trustees of the Colo. Ironworkers
Pension Fund v. Gunter (In re Gunter)</u>, 304 B.R. 458, 460-61
(Bankr. D. Colo. 2003); <u>Griffith, Strickler, Lerman, Solymos &
Calkins v. Taylor (In re Taylor)</u>, 195 B.R. 624, 629 (Bankr. M.D.
Pa. 1996).

general rule for agents of an entity with special authority and
discretion to manage important assets of the entity, such as the
officer or director of a corporation, In re Bernard, 87 F.2d at
706-07, the ambassador of a sovereign nation, Republic of Rwanda
v. Uwimana (In re Uwimana), 274 F.3d 806, 811 (4th Cir. 2001), or
an agent vested with durable power of attorney giving the agent
"unfettered control over the assets of a third party." BPS Guard
Services, Inc. v. Myrick (In re Myrick), 172 B.R. 633, 636
(Bankr. D. Neb. 1994).

Assuming, arguendo, that the court embraced the exceptions
carved out in In re Bernard, In re Uwimana, and In re Myrick, the
statute at issue here still would not suffice to create a
fiduciary relationship between Potillo and the plaintiffs.
Unlike the situation in those cases, there is nothing in the D.C.
Code conferring responsibilities and authority upon Potillo
"tantamount to those of a trustee of an express trust." In re
Myrick, 172 B.R. at 636. Indeed, the statute does not give
Potillo any authority at all, much less the authority (and
concomitant responsibility) to handle the plaintiffs' money.
Those duties flow from the contractual arrangement between the
parties, which, as the court has already discussed, created a
trust relationship between the plaintiffs and W & J, not Potillo.
Under any reading of § 523(a)(4), Potillo was not the fiduciary
by virtue of a statutory trust.

18

(c)  <u>Piercing of the corporate veil</u>

Nonetheless, the court concludes that in this instance Potillo's debt to the plaintiffs is that of a fiduciary.  The court reaches this conclusion by piercing the corporate veil of W & J and attaching the status of the corporation as a fiduciary to Potillo.  Under the veil-piercing doctrine, where the corporate form is "used to shield from scrutiny a sham transaction, . . . 'the courts will not permit themselves to be blinded or deceived by mere forms of law but, regardless of fictions, will deal with the substance of the transaction involved as if the corporate agency did not exist as the justice of the case may require.'"  <u>Christacos v. Blackie's House of Beef, Inc.</u>, 583 A.2d 191, 196 (D.C. 1990).[11]  As even the dissent in <u>In re Ellison</u> acknowledged, the doctrine can be used to attach the non-dischargeable liability of a corporation (in this case, W & J) to one of its principals (in this case, Potillo) if "there is reason to disregard the corporate form."  <u>In re Ellison</u>, 296 F.3d at 275 (Luttig, J., dissenting).

"Generally speaking, an individual will not be liable personally for the debts of a corporate entity unless it is 'proved by affirmative evidence that there is (1) unity of ownership and interest, and (2) use of the corporate form to

---

[11]  District of Columbia law governs the question of whether the court should pierce the corporate veil.  <u>Diamond Chem. Co. v. Atofina Chemicals, Inc.</u>, 268 F. Supp. 2d 1, 7 (D.D.C. 2003).

19

perpetrate fraud or wrong.'"  <u>Simon v. Circle Associates, Inc.</u>,
753 A.2d 1006, 1011 (D.C. 2000) (quoting <u>Bingham v. Goldberg,
Marchesano, Kohlman, Inc.</u>, 637 A.2d 81, 93 (D.C. 1994) (internal
quotation omitted)).  As the D.C. Court of Appeals explained in a
recent opinion,

> [t]his determination in turn requires the
> consideration of a range of factors,
> including whether corporate formalities have
> been observed; whether there has been any
> commingling of corporate and shareholder
> funds, staff, and property; whether a single
> shareholder dominates the corporation;
> whether the corporation is adequately
> capitalized; and, especially, whether the
> corporate form has been used to effectuate a
> fraud.

<u>Meshel v. Ohev Sholom Talmud Torah</u>, 869 A.2d 343, 363 (D.C.
2005).

     While there are many factors available for the court to
consider, "[n]o single factor is dispositive, and 'considerations
of justice and equity may justify piercing the corporate veil.'"
<u>Lawlor v. D.C.</u>, 758 A.2d 964, 975 (D.C. 2000) (quoting <u>Bingham</u>,
637 A.2d at 93).  Finally, "the decision to pierce will be
influenced by considerations of who should bear the risk of loss
and what degree of legitimacy exists for those claiming the
limited liability protection of the corporation."  <u>Vuitch v.
Furr</u>, 482 A.2d 811, 816 (D.C. 1984).  "The inquiry ultimately
turns on whether the corporation is, in reality, 'an <u>alter</u> <u>ego</u> or
business conduit of the person in control.'"  <u>Lawlor</u>, 758 A.2d at

20

975 (quoting <u>Labadie Coal Co. v. Black</u>, 672 F.2d 92, 97 (D.C. Cir. 1982)).

All of the factors delineated above support the piercing of the corporate veil in this case.  There is no question that Potillo owed and breached fiduciary duties to W & J and that W & J owed and breached fiduciary duties to the plaintiffs. Ordinarily, the plaintiffs could have sued W & J directly for its breach, and, if W & J had been anything more than a front for Potillo and his partner Michael Minor, the company could have sued Potillo and obtained a non-dischargeable judgment against him under § 523(a)(4).  But the plaintiffs could not have sued W & J in this instance because the company was run into the ground and then dissolved by Potillo and Minor, and the company, being a mere sham, would never have sued its owners.

Potillo used funds owned by the plaintiffs and held in trust by W & J to pay incidental personal expenses, and even hid the accreting debts of the plaintiffs from them by providing the plaintiffs with an accounting balance that Potillo knew to be false.  Under these circumstances, the fiction of W & J's existence--and, to be sure, the company was about as fictional as one could imagine--should not insulate Potillo from the consequences of his own misconduct.  The court will pierce the corporate veil in this instance and attach W & J's liability as a fiduciary for purposes of § 523(a)(4) to Potillo.

21

2.   <u>Defalcation</u>

Potillo's actions also constitute a "defalcation" within the meaning of § 523(a)(4).  "'Defalcation is not a synonym for fraud, embezzlement, or misappropriation, but has a broader meaning relative to the failure of a fiduciary to account for money received in a fiduciary capacity as a result of misconduct.'" <u>BCCI Holdings (Luxembourg), S.A. v. Clifford</u>, 964 F. Supp. 468, 484 (D.D.C. 1997) (quoting B. Weintraub & M. Resnick, <u>Bankruptcy Law Manual</u> ¶ 3.09[4], at 3-35 (1980)).  The test used by most courts to determine whether a fiduciary has engaged in defalcation is "essentially a recklessness standard." <u>Schwager v. Fallas (In re Schwager)</u>, 121 F.3d 177, 185 (5th Cir. 1997); <u>accord</u> <u>Meyer v. Rigdon</u>, 36 F.3d 1375, 1384-85 (7th Cir. 1997); <u>Carlisle Cashway, Inc. v. Johnson (In re Johnson)</u>, 691 F.2d 249, 257 (6th Cir. 1982); <u>Cent. Hanover Bank & Trust Co. v.</u>

Herbst, 93 F.2d 510, 512 (2d Cir. 1937).[12]

Potillo's actions went far beyond the realm of recklessness. According to his own testimony, Potillo, along with his partner Michael Minor, intentionally used security deposits and Operating Account funds to pay for W & J expenses that had nothing to do with the plaintiffs' buildings even though Potillo knew that these actions violated the management agreements between W & J and the plaintiffs and, in the case of tenants' security deposits, District of Columbia law. Potillo's self-composed "Accounting Reconciliation" details the amounts lost through this deliberate misappropriation and misuse of funds. Moreover,

---

[12] The standard is by no means universal. The First Circuit, for example, has held that "a defalcation requires some degree of fault, closer to fraud, without the necessity of meeting a strict specific intent requirement." Rutanen v. Baylis (In re Baylis), 313 F.3d 9, 18-19 (1st Cir. 2002). The Fourth, Eighth, and Ninth Circuits stand at the opposite end of the spectrum, having held that an innocent mistake can give rise to a defalcation. See In re Uwimana, 274 F.3d at 811 ("even an innocent mistake [that] results in misappropriation or failure to account" satisfies standard for defalcation); Tudor Oaks Ltd. P'ship v. Cochrane (In re Cochrane), 124 F.3d 978, 984 (8th Cir. 1997) (defalcation "includes the innocent default of a fiduciary who fails to account fully for money received") (internal quotation omitted); Lewis v. Scott (In re Lewis), 97 F.3d 1182, 1186 (9th Cir. 1996) (same). Finally, the Bankruptcy Appellate Panel for the Tenth Circuit has adopted a negligence standard. See Antlers Roof-Truss & Builders Supply v. Storie (In re Storie), 216 B.R. 283, 288 (B.A.P. 10th Cir. 1997) (concluding that defalcation is "a fiduciary-debtor's failure to account for funds that have been entrusted to it due to any breach of a fiduciary duty, whether intentional, wilful, reckless, or negligent"). In any event, the disagreement between these courts is irrelevant to this case because Potillo's conduct satisfies any of the definitions listed above.

Potillo admitted in a letter faxed to the owner of the plaintiffs
that his misconduct was "grounds for the commencement of legal
action." (Pl. Ex. 4). Potillo's conduct was intentional and
deliberate. His actions constitute a defalcation within the
meaning of § 523(a)(4).

B.    <u>Embezzlement</u>

Even if Potillo was not a defalcating fiduciary for purposes
of § 523(a)(4), his debts to the plaintiffs would still be non-
dischargeable because the debts are the product of embezzlement.
Embezzlement for purposes of § 523(a)(4) is "the fraudulent
appropriation of property of another by a person to whom such
property has been entrusted or into whose hands it has lawfully
come." <u>Moore v. United States</u>, 160 U.S. 268, 269 (1885).[13] "A
creditor proves embezzlement by showing that he entrusted his
property to the debtor, the debtor appropriated the property for
a use other than that for which it was entrusted, and the
circumstances indicate fraud." <u>Brady v. McAllister (In re
Brady)</u>, 101 F.3d 1165, 1173 (6th Cir. 1996); <u>accord</u> <u>Transamerica
Commercial Fin. Corp. v. Littleton (In re Littleton)</u>, 942 F.2d
551, 555 (9th Cir. 1991).

The plaintiffs entrusted Potillo, as an officer of W & J,

---

[13]  <u>Accord</u> <u>Miller v. J.D. Abrams Inc. (In re Miller)</u>, 156
F.3d 598, 602 (5th Cir. 1998); <u>Belfry v. Cardozo (In re Belfry)</u>,
862 F.2d 661, 662 (8th Cir. 1988) (quoting <u>In re Schultz</u>, 46 B.R.
880, 889 (Bankr. D. Nev. 1985)); <u>Spinoso v. Heilman (In re
Heilman)</u>, 241 B.R. 137, 171 (Bankr. D. Md. 1999).

with the management of their funds pursuant to the management
agreements entered into by the plaintiffs and W & J. Potillo
used (or permitted Minor to use) the funds to pay his own
company's operating expenses (as well as some incidental personal
expenses) instead.[14] Over an extended period of time, Potillo
then concealed the consequences of this ongoing misappropriation
from the plaintiffs. Moreover, Potillo knew that his conduct was
in breach of contract and unlawful when he engaged in that
conduct. Potillo's actions present a textbook case of
embezzlement.

### III

For the reasons set forth from the bench on November 23,
2005, the court will enter final judgment in favor of Longfellow
in the amount of $43,295.00, final judgment in favor of Allison
in the amount of $68,573.00, and final judgment in favor of
Randolph in the amount of $71,872.00, all with prejudgment
interest from May 24, 2003, at 6% per annum. Per the request of
the plaintiffs, the court will enter separate judgments for each
award. Furthermore, for the reasons set forth from the bench as
amended and supplemented in this opinion, the court concludes
(and the final judgments for each plaintiff will reflect) that

---

[14] The court has found, however, that Potillo did not
permit Minor's use of the DCHA rent checks deposited after W & J
terminated its management agreement with the plaintiffs, and
accordingly Potillo owes no debt in that regard.

25

Potillo's debts are non-dischargeable pursuant to 11 U.S.C. §

523(a)(4).

Separate judgments follow.

[Signed and dated above.]

Copies to: All counsel of record.